# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF GEORGIA
# MACON DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | Criminal Action No. 5:08-cr-40 (HL) |
| : | |
| **BROOKS E. BLITCH, III,** : | |
| : | |
| Defendant. : | |

_____

## **ORDER**

This matter is before the Court on the Motion to Dismiss Count Ten of the Indictment (Doc. 75) of Defendant Brooks E. Blitch, III. After consideration of the briefs, the Court grants the Motion, in part, as more fully stated herein.

**I.     INTRODUCTION**

Defendant, Brooks E. Blitch, III, was indicted along with four others following an investigation into wrongdoing by various officials within the Alapaha Judicial Circuit. At the time of the indictment, Blitch was a superior court judge in the Circuit. In the nineteen-count indictment, Blitch alone is charged in count ten with the offense of extortion by a public official in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 2. He moves in this Motion for dismissal of count ten, contending the indictment fails to allege an essential element of the offense, specifically the element of a quid pro quo.[1]

---

[1] The relief sought by the Motion is dismissal of count ten. However, in his Motion, Blitch acknowledges that the indictment alleges alternative theories of violations of the Hobbs Act, extortion by force and extortion under color of official right. (Br. at 2.) Blitch does not argue that the theory of extortion by force is subject to dismissal. Therefore, the relief actually sought by the Motion is dismissal of one theory of a violation of the Hobbs Act as presented in count ten.

## II. CONCLUSIONS OF LAW

Section 1951 of Title 18 of the United States Code, commonly referred to as the Hobbs Act, makes it unlawful for anyone to obstruct, delay, or affect commerce by, among other things, extortion. 18 U.S.C.A. § 1951(a) (West 2000). Section 1951 defines "extortion" to mean "the obtaining of property from another, with his consent, induced by the wrongful use of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C.A. § 1951(b)(2) (West 2000). Blitch is charged with violating the extortion clause of § 1951, in conjunction with the aiding and abetting provision of the Code, 18 U.S.C.A. § 2.

The Government's theory of the offense, as set out in the indictment, is that an individual identified as ETS took some equipment in which both Blitch and his son, Brooks E. Blitch, IV (hereinafter Blitch IV), had a financial interest. Initially, Blitch demanded that the Chief Magistrate Judge of Clinch County (one of the counties within the Alapaha Circuit) issue a warrant against ETS, but she declined, stating that only Blitch IV, whom she believed was the owner of the property, could seek a warrant. Linda Peterson, also a Clinch County Magistrate Judge, allegedly heard some of Blitch's conversation with the Chief Magistrate. Thereafter, Blitch IV sought a warrant for the arrest of ETS. On December 22, 2006, Peterson held a hearing on the arrest warrant application, at which hearing Peterson told ETS he could avoid arrest and incarceration if he paid Blitch IV for the property. As a result of what was said at the hearing, ETS immediately obtained the money, which he paid to Blitch IV. Shortly after

the hearing, on December 29, 2008, Blitch allegedly promised to reinstate Peterson to an associate magistrate position. Peterson was thereafter reinstated, and received a pay raise of $14,000 per year. As a result of these acts, the Government alleges that Blitch, aided and abetted by others, affected interstate commerce by extortion, in that he unlawfully obtained money from ETS, with his consent, induced by fear of economic harm and under color of official right.

In moving for dismissal of count ten, Blitch contends the indictment is deficient in that it fails to allege that he promised to take some action, or refrain from taking some action, in consideration for the money paid by ETS. As a result, according to Blitch, the indictment fails to allege an essential element: a quid pro quo.

The United States Court of Appeals for the Eleventh Circuit has severely limited the right of a defendant to challenge pretrial the sufficiency of the indictment brought against him. In <u>United States v. Salman</u>, 378 F.3d 1266 (11th Cir. 2004), the appellate court stated that if a defendant "was properly indicted, the government is entitled to present its evidence at trial and have its sufficiency tested by a motion for acquittal pursuant to Federal Rule of Criminal Procedure 29." <u>Id.</u> at 1268. In reaching its result, the court relied on the general rule that the "sufficiency of a criminal indictment is determined from its face," adding that the "indictment is sufficient if it charges in the language of the statute." <u>Id.</u>

Relying on the foregoing principles set out in <u>Salman</u>, the Government argues that count ten contains all of the elements of the crime charged and is sufficient to put

Blitch on notice as to the particulars of the crime charged against him. The Government further contends that it has properly alleged the quid pro quo necessary to a Hobbs Act violation under color of right, stating as follows: "Judge Blitch agreed to take official action (to re-appoint Linda Peterson) and that in exchange Peterson did extort money out of ETS. This money ultimately went to Judge Blitch and his son to repay them for damage done to equipment they jointly owned." (Resp. at 3.)

At the outset, the Court notes that the issue presented by Blitch's motion does not go to the sufficiency of the indictment in the manner prohibited by Salman. Blitch's challenge is far more basic: Does the indictment allege the essential elements of a Hobbs Act violation for extortion under color of official right? In Salman, the Eleventh Circuit stated that an indictment is sufficient if it charges in the language of the statue. More recently, however, the Supreme Court of the United States has noted "that while an indictment parroting the language of a federal criminal statue is often sufficient, there are crimes that must be charged with greater specificity." United States v. Resendiz-Ponce, 549 U.S. 102, 109, 127 S. Ct. 782, 789 (2007). In the Court's view, the Hobbs Act offense at issue here is a crime that must be charged with greater specificity than merely parroting the language of the statute. Specifically, the indictment must allege the quid pro quo element of the offense that has been grafted onto the statute by case law.

In McCormick v. United States, the Supreme Court held that evidence of a quid pro quo is necessary for conviction under the Hobbs Act when an official receives a

campaign contribution. 500 U.S. 257, 273-274, 111 S. Ct. 1807, 1817 (1991). The Court later adopted the quid pro quo requirement set forth in McCormick, in a case outside the campaign contribution context, but held that "fulfillment of the *quid pro quo* is not an element of the offense." Evans v. United States, 504 U.S. 255, 268, 112 S. Ct. 1881, 1889 (1992) (italics in original). In 1994, the Eleventh Circuit construed McCormick and Evans to require proof of a quid pro quo in a Hobbs Act extortion case unrelated to campaign contributions. United States v. Martinez, 14 F.3d 543, 553 (11th Cir. 1994). That same year, the Eleventh Circuit explicitly held: "For the reasons stated in United States v. Martinez, 14 F.3d 543, 552-54 (11th Cir. 1994), under United States Supreme Court precedent, an explicit promise by a public official to act or not act is an essential element of Hobbs Act extortion, and the defendant is entitled to a reasonably clear jury instruction to that effect." United States v. Davis, 30 F.3d 108, 109 (11th Cir. 1994) (footnote omitted).

It has thus been established in this Circuit since 1994 that an explicit promise by a public official to act or not act is an essential element of the offense of Hobbs Act extortion under color of official right. It is this Court's opinion that a Hobbs Act extortion under color of official right violation is the kind of crime contemplated by the Supreme Court in Resendiz-Ponce, in which merely parroting the language of the statute in the indictment is not sufficient: the indictment must set forth an allegation of an explicit promise by the public official to act or not act as an element of the offense. The indictment in this case fails to allege the quid pro quo element of the offense.

5

In the campaign context, the Supreme Court has explained quid pro quo conduct as follows:

> Political contributions are of course vulnerable if induced by the use of force, violence, or fear. The receipt of such contributions is also vulnerable under the Act as having been taken under color of official right, but only if the payments are made in return for an explicit promise or undertaking by the official to perform or not to perform an official act. In such situations the official asserts that his official conduct will be controlled by the terms of the promise or undertaking. This is the receipt of money by an elected official under color of official right within the meaning of the Hobbs Act.

McCormick, 500 U.S. at 257, 111 S. Ct. at 1816. The Court, quoting from a Fifth Circuit case, added, "'Whether described familiarly as a payoff or with the Latinate precision of *quid pro quo*, the prohibited exchange is the same: a public official may not demand payment as inducement for the promise to perform (or not to perform) an official act.'" Id. (quoting United States v. Dozier, 672 F.2d 531, 537 (1982)) (italics in original).

Here, the indictment alleges that after-the-fact, when Peterson had already undertaken to obtain the money from ETS by threatening to issue a warrant against him, and after the money had been given to Blitch IV, Blitch promised to reinstate Peterson as an associate magistrate judge and did, in fact, do so. But this is not a quid pro quo, as contemplated by McCormick. The indictment does not allege that Blitch made a demand of Peterson to obtain the money from ETS, or that he promised her the associate magistrate position if she would obtain the money from ETS. Nor does the indictment allege that Blitch directed or procured Peterson's conduct. Rather, the inference that can be drawn from the indictment is that after Peterson obtained the money from ETS, which served to benefit Blitch, Blitch chose to reward Peterson with

6

the associate magistrate position. As Blitch argues, the Government's allegations lack "the sort of *contemporaneous exchange* of a thing of value for a promise to take official action that is contemplated under *McCormick* and *Evans* to state a Hobbs Act offense." (Reply Br. at 7, italics in original.)

The Court fails to see how Blitch's alleged promise to take official action on Peterson's behalf *after* she allegedly acted of her own accord to obtain money from ETS can provide the basis for the quid pro quo element of a Hobbs Act violation. The Court declines to adopt a construction of the Hobbs Act in which one person acts wrongfully in the hopes of pleasing another and when the other seemingly adopts that conduct by rewarding the wrongdoer, he then commits a Hobbs Act violation. Accordingly, the Court agrees with Blitch that count ten is subject to dismissal to the extent that it alleges a violation of the "under color of official right" prong of § 1951.

### III. CONCLUSION

Insofar as Blitch's Motion seeks dismissal of that portion of count ten in which the government alleges Blitch committed extortion under color of official right, the Motion is granted. That portion of count ten in which the government alleges Blitch committed extortion by use of fear of economic harm is unchallenged and, therefore, insofar as the Motion seeks to have count ten dismissed in its entirety, the Motion is denied.

**SO ORDERED**, this the 4th day of December, 2008.

*s/  Hugh Lawson*
**HUGH LAWSON, JUDGE**

mls